**Electronically Filed
Intermediate Court of Appeals
30713
13-MAR-2014
03:54 PM**

NO. 30713

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ESTRELLITA GAY TIMON, Plaintiff-Appellee/Cross-Appellant,
v.
NEAL JACKSON TIMON, Defendant-Appellant/Cross-Appellee.

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-DIVORCE NO. 07-1-3721)

AMENDED MEMORANDUM OPINION
(By: Reifurth and Ginoza, JJ., with
Fujise, Presiding Judge, concurring separately)

In this appeal arising out of a divorce, Defendant-Appellant/Cross-Appellee Neal Jackson Timon (Husband) appeals from the following orders and decree entered in the Family Court of the First Circuit (family court)[1]: "Order re Plaintiff's Motion for Pre-Decree Relief (Filed November 16, 2007)" (Order for Pre-Decree Relief) filed on February 5, 2008; "Order re Motion to Find Defendant in Contempt" (Order re First Contempt Motion) filed on March 13, 2008; "Order re Motion to Enforce" (Order to Enforce) filed November 3, 2009; "Order Granting in Part and Denying in Part Plaintiff's Motion to Find Defendant in Contempt of Court For Violations of Court Orders and For Other

---

[1] The Honorable Paul T. Murakami presided over the trial portion of this case. Judge Murakami issued the oral decision of the family court, and entered the Order to Clarify Decision, the Decree, and the Order re Reconsideration. The Honorable Karen M. Radius (Order for Pre-Decree Relief and Order re First Contempt Motion), the Honorable Jennifer L. Ching (Order to Enforce), and the Honorable William J. Nagle III (Order re Second Contempt Motion) entered interlocutory orders on appeal in this matter.

Relief Filed December 28, 2009" (Order re Second Contempt Motion) filed April 14, 2010; "Order re Plaintiff's Motion to Correct and Clarify Decision" (Order to Clarify Decision) filed June 7, 2010; "Decree Granting Absolute Divorce" (Decree) filed June 24, 2010; and "Order Denying Defendant's Motion for Reconsideration Filed July 6, 2010" (Order re Reconsideration) filed August 3, 2010. Plaintiff-Appellee/Cross-Appellant Estrellita Gay Timon (Wife) cross-appeals from the Decree.

On appeal, Husband contends the family court committed the following errors: (1) the family court abused its discretion by awarding Wife temporary alimony in the amount of $4,000 per month; (2) the family court abused its discretion by ordering Husband to reimburse the home equity line after finding Husband violated the court's prior order; (3) the family court abused its discretion in determining Husband made unauthorized withdrawals, charging Husband with receipt of said amount, and ordering Husband to pay Wife's attorneys' fees and costs; (4) the family court clearly erred by (a) finding Husband failed to establish and prove receipt of and net values of any date of marriage assets or during-marriage inheritances and therefore did not give Husband credit under the Martial Partnership Model for Husband's premarital property or during-marriage inheritances, (b) finding the current value of the party's real property was $480,600, (c) failing to find that Wife wasted assets, (d) finding that Husband's request for credit or payment for claimed allowance is unsupported and unreasonable and therefore failing to award a credit or payment for Husband's allowance and/or to allow reimbursement for his moorage pursuant to "Stipulation Regarding Sale of Dental Practice", (e) finding there to be insufficient evidence to allocate the court appointed master's fees between the parties and therefore failing to order Wife to pay the fees, (f) finding there to be insufficient evidence to determine the amount of 2009 taxes, or the allocation of such, and therefore failing to order Wife to contribute to the 2009 taxes; (5) the family court erred by concluding Husband's professional "personal

2

goodwill" was not applicable after the practice was sold during the marriage; and (6) the family court abused its discretion when it denied Husband's motion for reconsideration.[2]

Based on the foregoing, Husband requests that this court: (1) vacate paragraph 1 of the Order for Pre-Decree Relief and order reimbursement of any temporary alimony in excess of $1,000 per month; (2) vacate various Findings of Fact (FOF) and Conclusions of Law (COL) filed on October 28, 2010[3]; (3) vacate the Order to Clarify Decision; and (4) vacate paragraph 7 of the Decree.

On cross-appeal, Wife contends various FOFs and COLs by the family court are erroneous[4] which amount to two general claims: (1) the family court erred when it deviated from the Marital Partnership Model and abused its discretion by awarding Wife $65,062.31 less than a one-half share of the marital estate; and (2) the family court abused its discretion in denying Wife post-decree alimony.

Based on the foregoing, Wife requests that this court vacate or reverse the following: (1) paragraphs 2 and 7 of the Decree; (2) the Order to Clarify Decision; and (3) the challenged FOFs and COLs.

For the reasons discussed below, we affirm in part, vacate in part, and remand for further proceedings with regard to the equalization payment ordered by the family court.

_____

[2] We have reordered Husband's multiple points of error in order to group them as Husband's arguments regarding interlocutory orders and Husband's arguments regarding the final property division, and to group them by like standard of review.

[3] Husband specifically requests this court vacate FOFs 20, 24, 25, 28, 73, 74, 75, 77, 78, 81, 82, 84, 85, 86, 87, 89, 90, 94, 100, 101, 102, 104, 106, 107, 108, 109, 112, 113, 119, and 120, as well as COLs 5, 8, 11, 18, 20, 21, 23, 26, 31, 34, and 37(7). In the "Findings of Fact and Conclusions of Law," the family court found all of the orders previously entered in the case to have been properly entered. Thus, while Husband is requesting specific FOFs and COLs be reversed, he is also challenging the bases upon which the orders were issued.

[4] Wife challenges FOFs 65, 66, 112, 120, 121, and 122, as well as COLs 27, 34, 37(2), and 37(7).

I.  Husband's Appeal

A.  Interlocutory Orders

Husband contends the family court abused its discretion by ordering him to pay $4,000 per month in temporary alimony in the Order for Pre-Decree Relief, ordering him to reimburse the home equity line in the Order re First Contempt Motion, and ordering him to reimburse unauthorized withdrawals from accounts in the Order re Second Contempt Motion.

> Generally, the family court possesses wide discretion in making its decisions and those decision [sic] will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai'i 183, 189-90, 20 P.3d 616, 622-23 (2001)). "Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." Ek v. Boggs, 102 Hawai'i 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (internal quotation marks, citation, and brackets omitted).

1.  Temporary Alimony

The family court did not abuse its discretion in awarding Wife $4,000 in temporary alimony. It is within a court's discretion to make an award of temporary alimony pursuant to Hawaii Revised Statutes (HRS) § 580-9 (2006),[5] "limited only by the standard that it be fair and reasonable." Farias v. Farias, 58 Haw. 227, 232, 566 P.2d 1104, 1108 (1977) (quoting

_____

[5] HRS § 580-9 provides:

> § 580-9. Temporary support, etc. After the filing of a complaint for divorce or separation the court may make such orders relative to the personal liberty and support of either spouse pending the complaint as the court may deem fair and reasonable and may enforce the orders by summary process. The court may also compel either spouse to advance reasonable amounts for the compensation of witnesses and other expenses of the trial, including attorney's fees, to be incurred by the other spouse and may from time to time amend and revise the orders.

4

Richards v. Richards, 44 Haw. 491, 496-97, 355 P.2d 188, 192-93 (1960)).

If a party's income is insufficient to maintain both an accustomed standard of living and efficient litigation of the case, a court may award temporary alimony. Farias, 58 Haw. at 232, 566 P.2d at 1108. At the time of the Order for Pre-Decree Relief (February 2008), Husband was a dentist who made $33,490.85 gross income as monthly average net business profit, while Wife earned social security benefits in the amount of $887 per month. Husband's own income and expenses report stated that, after expenses which included paying for the marital residence, he saved $14,270.24 each month. Wife reported she had non-house related expenses of $9,280 per month, well above her net monthly income. Furthermore, the Order for Pre-Decree Relief made no mention of attorneys' fees, thus it appears Wife was responsible to pay her own legal expenses until subsequent orders were issued as to fees.[6]

A court has discretion to "enable the wife to live comfortably, pending the litigation, in the station in life to which [her husband] accustomed her." Richards, 44 Haw. at 497-98, 355 P.2d at 193 (quoting Harding v. Harding, 32 N.E. 206, 208 (Ill. 1892)). In light of the circumstances of this case, the family court did not abuse its discretion in awarding Wife $4,000 per month in temporary alimony.

## 2. Reimbursement of the Home Equity Line

Husband asserts the family court erred in ordering him to reimburse the home equity line to its early-January 2008 balance in the Order re First Contempt Motion because no court order restraining expenditures was in effect and his receipt of an advance of $30,000 was used to pay marital debts. Husband fails to cite to evidence to support either contention, or to any

---

[6] Temporary alimony can be modified prospectively when there is a showing of a change in circumstances. Farias, 58 Haw. at 233, 566 P.2d at 1108. Husband never moved for modification after the court ordered him to pay some of Wife's attorneys' fees in subsequent orders or after his financial situation changed.

authority which indicates how the court erred. Where an appellant fails to cite to any authority or parts of the record to support their argument, the party waives the argument. Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc., 114 Hawai'i 37, 53, 155 P.3d 1138, 1154 (2007).

### 3. Reimbursement of Unauthorized Withdrawals

Husband contends the family court erred in ordering him to reimburse $43,416[7] to the depository accounts[8] and pay Wife's attorneys' fees and costs in litigating the motion resulting in the Order re Second Contempt Motion.

Husband proffers two arguments as to why the family court erred: the doctrine of law of the case,[9] and the withdrawn money was spent for Wife's benefit and Husband's allowance.

Husband's law of the case argument is without merit. The family court found Husband made unauthorized withdrawals in violation of the family court's October 21, 2009 order freezing the depository accounts and the Order to Enforce which prohibited withdrawals from the depository accounts beyond November 2009. Those orders were in place as a result of Wife's motion to enforce the August 4, 2009 "Stipulation Regarding Sale of Dental Practice," an agreement between the parties to allow Husband to sell his dental practice. Thus, Husband made unauthorized withdrawals in violation of the court's orders which enforced a stipulation between the parties. Further, even if we accept

---

[7] In her memorandum in opposition to Husband's motion for reconsideration on the Order re Second Contempt Motion, Wife acknowledged it was a mistake on her part to request, and the court to order, $43,416 be reimbursed to the depository account, as Husband actually spent $42,319.02 in unauthorized funds. The family court noted in FOF 47 that at no time did Husband present any evidence or offer any cogent reasons to overturn the Order re Second Contempt Motion.

[8] In the August 4, 2009 "Stipulation Regarding Sale of Dental Practice," the parties agreed, in pertinent part, that Husband's dental practice could be sold pursuant to the "Dental Practice Purchase and Sale Agreement," and the net proceeds of the sale were to be placed into two Central Pacific Bank accounts, ******1096 ($240,000) and ******1534 ($114,886.05).

[9] "[T]he doctrine of law of the case . . . refers to the usual practice of courts to refuse to disturb all prior rulings in a particular case[.]" Wong v. City & Cnty. of Honolulu, 66 Haw. 389, 396, 665 P.2d 157, 162 (1983).

Husband's contention that the withdrawn money was authorized by the previously entered January 8, 2009 "Stipulation Re Defendant's Motion for Pre-Decree Relief (Filed October 31, 2008) and Resolving Other Issues and Order" (January 2009 Stipulation and Order), all of the unauthorized withdrawals occurred after the October 21, 2009 order freezing the accounts. Husband violated court orders.

Husband's contention that the withdrawn money was spent for the benefit of Wife does not alleviate the fact he unilaterally withdrew money from the depository accounts in violation of court orders.[10] Between October 24, 2009, and January 6, 2010, Husband withdrew a total of $72,551.32 from the depository accounts. However, Wife only sought, and the court only awarded, $43,416. At the January 13, 2010 hearing on Wife's motion to find Husband in contempt, Wife explained she only requested $43,416 after subtracting from the total withdrawals an amount she conceded were for her benefit in some manner. Thus, it appears the court already gave Husband credit for expenses for Wife's benefit.

Husband does not offer any argument as to why the court erred in ordering him to pay Wife's attorneys' fees and costs related to the motion outside of the general denial of the ordered reimbursement to the depository account.

Husband fails to demonstrate how the family court abused its discretion in ordering Husband to reimburse the depository account.

B.    **Division of Property**

Husband makes a series of challenges to the family court's FOFs and COLs related to the credits given in the property division. A court's FOFs and COLs that are a mixture of

---

[10] Confusingly, Husband argues he both withdrew the funds to repair his boat as permitted under the January 2009 Stipulation and Order, and he contends he withdrew the funds to pay for Wife's benefit and for joint expenses. The positions are inapposite if we are considering the same $43,416. For instance, in his opening brief, Husband alleges he spent $43,342.91 on expenses that were either for Wife's benefit, joint expenses, or his allowance.

fact and law are reviewed under the clearly erroneous standard. Chun v. Bd. of Trs. of Employees' Ret. Sys. of State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005). The trial court's determination is clearly erroneous when "the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Bhakta v. Cnty. of Maui, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005);. Additionally, "[a]n appellate court will not pass upon issues dependent upon credibility of witnesses and the weight of the evidence; this is the province of the trial judge." Booth v. Booth, 90 Hawai'i 413, 416, 978 P.2d 851, 854 (1999) (citations and internal quotation marks omitted).

### 1. Credit for Pre-marital Property and During Marriage Inheritances

Husband argues the family court erred by failing to credit Husband with Category 1 and Category 3 net market value of separate property contributed to the partnership under the Marital Partnership Model.

### a. Pre-Marital Property

The family court stated in its FOFs that Husband provided no credible evidence of date of marriage (DOM) equity, credit, or entitlement for claimed pre-marital properties[11] and no evidence to demonstrate he ever owned property at 5949C Kalaniana'ole Highway.[12] The court concluded that because of the lack of credible and competent evidence to establish net equity

---

[11] Husband claims to have owned properties located at 84-770 Farrington Highway (Lot 392A), 84-766 Farrington Highway (Lot 392B); 84-772 Farrington Highway (Lot 392C), 84-776 Farrington Highway (Lot 393C), and 86-76 Pokai Bay Street.

[12] On appeal, Husband also asserts that the court erred in not awarding him a Category 1 contribution for property located at Lot 393C. Despite Husband producing exhibits at trial related to Lot 393C, the family court did not receive the exhibits into evidence and did not issue a FOF or COL concerning the particular piece of property. The only exhibit received into evidence was Plaintiff's exhibit 90, which demonstrated Husband took out a second mortgage on the property in 1981. Husband does not assign error to any of the above. Arguments not raised on appeal are considered waived. Bitney v. Honolulu Police Dept., 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001). In any event, evidence produced by Husband regarding this property is the same type rejected specifically for the other properties under Booth, supra.

value of the properties at the date of marriage, it was proper to deny Husband's request for Category 1 contributions pursuant to Booth.

Here, Husband introduced the following evidence for Lot 392A, Lot 392B, Lot 392C, and 86-76 Pokai Bay Street: personal testimony, agreement of sale, deed, and a personal calculation of DOM value. The family court found Husband's testimony self-serving and not credible, and concluded his testimony and self-constructed calculation of DOM value to be insufficient to establish net equity on date of marriage.

Furthermore, for the property at 5949C Kalanianaʻole Highway, the court found that Husband failed to demonstrate he acquired ownership of the property. No agreement of sale or deed for the property in Husband's name was received into evidence. The family court found his testimony not credible, unsubstantiated by the documentary evidence, and, in fact, inconsistent with the evidence.[13]

The assessment of the weight and credibility of Husband's evidence lay within the sound discretion of the family court. There are no grounds for this court to conclude the family court was clearly erroneous in denying Husband credit for Category 1 contributions. See Booth, 90 Hawaiʻi at 416, 978 P.2d at 854 ("[I]n light of the fact that no actual appraisals were presented to the family court, the court's conclusion that respondent did not present sufficient evidence of the amount of equity on the date of marriage . . . cannot be said to be clearly erroneous.").

---

[13] Husband asserted he purchased the property from Donald and Martha Lou McGrath and sold the property to Jan and Kiana Weinberg. However, Wife produced a deed dated February 22, 1983, which transferred the property directly from the McGraths to the Weinbergs, and was signed by Husband in the role of "purchaser".

**b.    During Marriage Inheritances**

The family court found Husband failed to produce any credible evidence to support his assertion that he received inheritances totaling $244,999.99 during the marriage.[14]

On appeal, Husband does not reference any documentary evidence in the record to substantiate he received inheritances or the amount of such.[15]  He only cites to his testimony that he received the alleged inheritances and Wife's general testimony that she was aware Husband received inheritances.  Assessment of the weight and credibility of testimony lay within the sound discretion of the family court.

Like his claimed Category 1 contributions, there are no grounds for this court to conclude that the court clearly erred in denying Husband Category 3 credit.

**2.    Valuation of Marital Residence**

Husband argues that the family court erred when it found the marital residence (on Prospect Street) had a 2010 valuation of $480,600.[16]  In FOFs 100-02 and COL 20, the family court stated it based its valuation on the 2010 Real Property Assessment Notice by the City and County of Honolulu.

Husband argues that a family court should use the fair market value on the relevant date to determine the value of the marital residence pursuant to Antolik v. Harvey, 7 Haw. App. 313, 318-19, 761 P.2d 305, 309 (1988).  Fair market value is defined

---

[14]  Husband asserts he inherited from his aunt's estate funds totaling $126,999.99 and from his mother's estate funds totaling roughly $118,000.

[15] In his reply brief, Husband cites to Baker v. Bielski, 124 Hawai'i 455, 248 P.3d 221 (App. 2011), for the proposition that Husband's personal knowledge of the value of his inheritance is sufficient to establish the "existence of and the amount of the inheritances," when it's the only evidence presented at trial on the issue.  This characterization of the case ignores that the court was reviewing the admission into evidence of documentary evidence to support the oral statements.  Id. at 233-34, 248 P.3d at 467-68. Furthermore, the court was considering the value of an asset (property), not the existence of one (alleged inheritance).  Id.

[16]  In his reply brief, Husband argues that the 2010 Real Property Assessment Notice (Plaintiff's Exhibit 77) was improperly admitted into evidence because Wife lacked the personal knowledge to testify to the assessment value.  However, Exhibit 77 was not admitted into evidence.  The Notice was admitted into evidence as Defendant's (Husband) Exhibit LLL.

as "the amount at which an item would change hands from a willing seller to a willing buyer, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Antolik, 7 Haw. App. at 319, 761 P.2d at 309. During trial, Wife testified she would not sell the marital residence for $480,000 because she wanted to remain there. Husband argues his estimation that a fair selling price would be between $580,000 and $620,000 was in line with market conditions and consistent with a 2008 appraised value of $580,000. However, the family court, in its discretion, can rely upon an annual tax assessment and the party's asset and debt statements to calculate the value of property. Schiller v. Schiller, 120 Hawai'i 283, 294, 205 P.3d 548, 559 (App. 2009). The family court found the tax assessment was more accurate than the two-year old appraisal, in line with Wife's testimony regarding depreciation in value, and that Husband's testimony was not credible. Furthermore, the family court found that Wife's statement that she would not sell the residence for $480,000 did not reflect an accurate determination of fair market value because she did not want to sell for any price.[17]

The assessment of the weight and credibility of evidence lay within the sound discretion of the family court. We do not have a firm conviction that a mistake has been made.

### 3. Wife's Alleged Waste

Husband contends the court erred in finding Wife did not waste assets totaling $65,500. In FOF 105-108, the family court indicated that any withdrawals by Wife from Husband's bank accounts were done with his knowledge and for non-wasteful purposes. Husband provides no record citations to support his factual assertions for his arguments.

Husband alleges that Wife "equitably should be charged with having received the dollar value of the reduction" because

---

[17] Wife testified: "I've been living there, um, during this period of time, uh, of separation, and I consider it my home. It's very safe. I know my neighbors. I would like to continue to live there. I don't have a boat to live on, so I'd like to live in the apartment."

she reduced the dollar value of the marital estate during the "time of the divorce."[18] Higashi v. Higashi, 106 Hawai'i 228, 242, 103 P.3d 388, 402 (App. 2004). Husband argues *inter alia* Wife should be charged with having received $7,500 that she used to pay to her attorney[19] and $28,000 for her own use (March 1, 2007 - $3,000; May 18, 2007 - $5,000; July 27, 2007 - $5,000; August 20, 2007 - $5,000; November 9, 2007 - $5,000; December 19, 2007 - $5000).[20]

Affording Husband the date of separation (June 2007) as the commencement of the time of divorce, the March 1 and May 18 withdrawals were prior to the time of divorce. Husband does not cite to any part of the record or any evidence regarding the remaining withdrawals which contradict the family court findings. The assessment of the weight and credibility of evidence lay within the sound discretion of the family court. Husband fails to show that the family court erred.

### 4. Costs of Repairs to Prowler

In his opening brief, Husband argues that the family court erred in counting $85,118.66 expended on repairs to his boat "Prowler" against him in the final property division. Husband does not identify where in the record the alleged error

---

[18]      Depending on the facts, the time of the divorce commences on the earliest of the following dates: (i) the date of the final separation in contemplation of divorce (DOFSICOD); (ii) the date of the filing of the complaint for divorce; (iii) the date one or both of the parties took a substantial step toward the DOFSICOD that subsequently occurred, or (iv) the date one or both of the parties took a substantial step toward the filing of the complaint for divorce that was subsequently filed.

Higashi, 106 Hawai'i at 241, 103 P.3d at 401 (footnotes omitted).

[19] The amount identified by Husband in briefing is inconsistent with the evidence in the record. Review of the record shows the checks Husband cites to actually total $8,000 (June 25, 2007 - $500; July 15, 2007 - $2,500; October 22, 2007 - $5,000). This discrepancy does not affect the analysis.

[20] Husband also claims that Wife should be charged with having received $25,000 in saved alimony Wife deposited into a bank account and $5,000 she gave her mother for safe keeping, both in 2008. Husband cites to no legal authority which designates Wife's ability to save money she properly received as temporary alimony as wasteful, or any evidence to identify marital funds (besides alimony payments) as the source of the money.

was brought to the family court's attention.  Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4), we can disregard this argument.  HRAP Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]").

### 5.    Remaining Contentions

Husband argues the family court erred by failing to order Wife to contribute to both the court appointed master's fees and the 2009 taxes, as well as denying Husband a credit/payment for an alleged missed allowance and moorage payment.  In FOF 56 and 115-117, the family court indicated that insufficient evidence was presented to the court to determine allocation of the master's fees and 2009 taxes, and the request for a credit/payment was unsupported and unreasonable.

For all of these issues, Husband does not point to specific evidence in the record which controverts the court's findings.  In regard to the master's fees, 2009 taxes, and the amount requested for moorage payments, Husband cites to testimony, but the assessment of the weight and credibility of evidence lay within the sound discretion of the family court.

Additionally, Husband's argument that he should have received a monthly allowance for January 2010 from marital funds is without merit because, pursuant to the Order re Second Contempt Motion, Husband was not permitted to use marital property to cover his living expenses after November 2009.

Husband fails to indicate the family court clearly erred on these issues.

### C.    "Personal Goodwill"

Husband argues that the family court erred by including the personal goodwill portion of the sale price of his dental practice as a marital asset.  In a stipulation filed on August 4, 2009, the parties stipulated that the sale of the dental practice could proceed pursuant to the terms of a Dental Practice Purchase and Sale Agreement (Dental Sale Agreement) attached as Exhibit "A" to the stipulation, "provided that neither party nor the

Court is bound by the allocation of the purchase price described in said Exhibit 'A'." The Dental Sale Agreement allocates $200,000 of the sales price to personal goodwill.

In COL 21, the family court concluded that "the precedent of <u>Antolik v. Harvey</u>, 7 Haw. App. 313, 761 P.2d 305 (1988), which found that personal goodwill can be excluded in estimating the value of a business involved in a marital dissolution, is not applicable after the business is sold during the marriage."[21] A court's conclusions of law are reviewed under the right/wrong standard. <u>Chun</u>, 106 Hawai'i at 430, 106 P.3d at 353.

We do not agree with the family court's legal conclusion that the analysis in <u>Antolik</u> is always inapplicable once a business is sold during the marriage. In <u>Antolik</u>, this court adopted a view that "distinguishes between true goodwill which is a marketable business asset and the goodwill which is dependent on the continued presence of the professional involved. The former constitutes marital property, while the latter does not." 7 Haw. App. at 317-18, 761 P.2d at 308. The <u>Antolik</u> decision quotes the following passage with approval to explain the distinction between goodwill of a business and personal goodwill:

> [W]here goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of such business. On the other hand, <u>if goodwill depends on the continued presence of a particular individual, such goodwill, by definition, is not a marketable asset distinct from the individual. Any value which attaches to the entity solely as a result of personal goodwill represents nothing more than probable future earning capacity, which, although relevant in determining alimony, is not a proper consideration in dividing marital property in a dissolution proceeding.</u>

---

[21] The family court also relied on the analysis as to personal goodwill in <u>Weinberg v. Dickson-Weinberg</u>, 121 Hawai'i 401, 220 P.3d 264 (App. 2009), <i>vacated in part, aff'd in part</i>, 123 Hawai'i 68, 229 P.3d 1133 (2010). That portion of <u>Weinberg</u>, however, was later vacated by the Hawai'i supreme court.

7 Haw. App. at 318, 761 P.2d at 308-09 (citation omitted) (emphasis added).

Here, there is nothing in the Dental Sale Agreement that required Husband's continued presence as part of the dental practice that he sold. Indeed, although Husband argues that he helped to transition patients and left his name on the office door for a period of time, he admitted that the Dental Sale Agreement did not obligate him to do such things. Therefore, because there was nothing in the Dental Sale Agreement that required Husband's continued presence related to the dental practice, there is no evidence to support allocating part of the sale to his personal goodwill. Moreover, as expressly provided by the stipulation between the parties, the family court was not bound by the allocation of the purchase price set forth in the agreement.

Thus, ultimately, the family court did not err in considering the entirety of the dental practice sales price as a marital asset.

D.  **Motion for Reconsideration**

Husband contends the family court erred in denying his post-decree motion for reconsideration. A trial court's ruling on a motion for reconsideration is reviewed for an abuse of discretion. Taqupa v. Taqupa, 108 Hawai'i 459, 465, 121 P.3d 924, 930 (App. 2005).

A motion for reconsideration is a party's opportunity to present new evidence and/or arguments that could not have been presented during the trial. See id. Reconsideration is not an avenue to relitigate issues or to raise arguments or evidence that could and should have been brought during trial. See id. Husband's memorandum in support of the motion for reconsideration indicates no new evidence or arguments that could not have been raised at trial. The family court did not abuse its discretion in denying the motion.

## II.   Wife's Cross-Appeal

### A.   Deviation from Partnership Model Division

On cross-appeal, Wife contends that the family court abused its discretion in decreasing the equalization payment by roughly $65,000.   Husband does not address this argument in his answering brief.[22]   An appellee need not respond to each point raised in the opening brief.   Omerod v. Heirs of Kaheananui, 116 Hawai'i 239, 268, 172 P.3d 983, 1012 (2007).   In such an instance, reversal is not automatic as appellant still must convince the appellate court that reversible error occurred.   Id. at 268-69, 172 P.3d at 1012-13.

Marital property is divided according to the Marital Partnership Model.   Gussin v. Gussin, 73 Haw. 470, 483-84, 836 P.2d 484, 491 (1992).   A court may deviate from an equal division of property if the "facts present any [valid and relevant considerations] authorizing a deviation from the Partnership Model Division . . . ."   Schiller, 120 Hawai'i at 287, 205 P.3d at 552.   If the facts present relevant considerations authorizing deviation, the court must next decide whether or not to deviate from an equal division and the extent of that deviation.   Id. Whether the facts authorize deviation is a question of law reviewed under the right/wrong standard.   Id.   The court's decision to deviate and the extent of the deviation is reviewed for an abuse of discretion.   Id.

In the June 3, 2010 oral announcement of the family court's ruling on Wife's motion to correct and clarify the decision, the court explained its decision to deviate from an equal distribution of property as follows: "[G]iven the anticipated increase in value of the property which she owns, that should offset the discrepancy.   It's essentially the basis. So there's going to be a deviation of about 65,000."   In FOF 121,

---

[22]   Husband rephrases the issue as a broader question of whether the court erred in the "Property Division Allocation and Equalization" and only reiterates arguments from his opening and reply briefs in his appeal.

the family court expounded on several "valid and relevant considerations" upon which it based its decision to deviate:

> (1) the age of the parties in that Husband is slightly older than Wife, (2) the respective needs of the parties and the circumstances that they are left in following the Courts (sic) decision, (3) their actual respective financial conditions in that a significant portion of the computation in the property division chart were based on credits taken against Husband for funds previously spent and ordered against him by prior Court orders (put another way: while based on accounting type principles Husband showed a very large "credit", said credit did not reflect monies that were actually payable from one party to another), (4) Wife was awarded an asset that may have a better likelihood of appreciation (the condominium) as opposed to the award to Husband of a boat, which has less of a likelihood of appreciation by their inherent natures, and (5) the fact that Wife will have an actual larger amount of liquid assets available to her.

Wife acknowledges some of the grounds for deviation stated in the family court's "Findings of Fact and Conclusions of Law" are valid considerations. However, Wife contends that the disparity between the parties was not significant enough to warrant deviation. Therefore, Wife argues the family court erred in deviating and in the extent to which it deviated from an equal division.

First, Wife contends that possible appreciation of property is too speculative for a court to consider, citing to Jackson v. Jackson, 84 Hawai'i 319, 933 P.2d 1353 (App. 1997), for the proposition that a court can only consider post-divorce occurrences if they are more or less certain to occur. Jackson dealt with a different situation, the tax ramifications from the sale of assets, and is thus not dispositive. In our view, although the consideration of future appreciation of real property is not impermissible *per se*, the family court has neither explained its implicit conclusion that such appreciation is not already included in the fair market values of the condominium and the Prowler, nor indicated how any potential future appreciation of the condominium supports the amount of the deviation. In sum, there is no finding or explanation for how possible appreciation of Wife's property supports reducing the

17

equalization payment by $65,000, and thus remand on this issue is warranted.

Second, Wife argues the family court did not properly consider Husband's unauthorized withdrawals and advances as part of his liquid assets. Outside of the basic consideration of partnership principles (i.e., money put into a partnership), the focus of the property division is the present and future under HRS § 580-47. Jackson, 84 Hawai'i at 333, 933 P.2d at 1367. Husband's past expenditures are not liquid assets because the money has been spent and is not presently transferable. It was within reason for the family court to not consider such money a liquid asset. Wife has failed to show how the family court abused its discretion in its consideration of liquid assets.

Lastly, Wife contends that the family court abused its discretion in its treatment of the parties' ages and their needs moving forward. Wife argues Husband's earning potential as a retired dentist is drastically higher than hers as a part-time employee earning $15 per hour, and based on the court's allocation of debt on the marital residence, she is saddled with a larger portion of the debt. However, while the court can contemplate Husband's future earnings, the court properly considered that, given her age, Wife can work. The court found that although Wife testified to physical and emotional conditions which limited her earning potential, she maintained a fairly active lifestyle as a volunteer, worked as of trial, and earned social security benefits of almost $900. Wife makes no meritorious argument that such findings are clearly erroneous. Also, a review of the property division chart indicates the equalization payment from Husband to Wife was roughly equal to the debt on the marital residence under which Wife was now burdened. Thus, her ongoing needs would mostly be her living expenses, which the court found she could meet with her available resources (which include income, marital residence, and a Fidelity Investments account). While Husband received more in social security benefits each month (approximately $2,000), and

18

potentially earns more money if in the work force, at the time of trial, he had retired from practice. There is nothing inherently problematic in the family court's expectation that both parties probably would engage in post-divorce income producing activity to remain self-sufficient.

With regard to the family court's deviation from the Partnership Model, we thus remand to the family court on the issue of possible future appreciation of Wife's property.

**B.** **Post-Decree Alimony**

Wife's other argument on cross-appeal is that the family court abused its discretion in denying her post-decree alimony. Wife's basic contention is that it is inequitable that Wife must work, perhaps full-time, to meet her needs, while Husband can remain retired to meet his.

In Wong v. Wong, 87 Hawai'i 475, 960 P.2d 145 (App. 1998), this court identified the main factual questions in deciding issues of alimony:

> [T]he first relevant circumstance is the payee's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The second relevant circumstance is the payee's ability to meet his or her need without spousal support. Taking into account the payee's income, or what it should be, including the net income producing capability of his or her property, what is his or her reasonable ability to meet his or her need without spousal support? The third relevant circumstance is the payor's need. What amount of money does he or she need to maintain the standard of living established during the marriage? The fourth relevant circumstance is the payor's ability to pay spousal support. Taking into account the payor's income, or what it should be, including the income producing capability of his or her property, what is his or her reasonable ability to meet his or her need and to pay spousal support?

> * * *

> When answering any of the above questions, the following two rules apply: Any part of the payor's current inability to pay that was unreasonably caused by the payor may not be considered and must be ignored. Any part of the payee's current need that was caused by the payee's violation of his or her duty to exert reasonable efforts to attain self-sufficiency at the standard of living established during the marriage may not be considered and must be ignored.

Id. at 485, 960 P.2d at 155 (citations omitted). Looking at the relevant factors and questions, Wife has failed to demonstrate the family court abused its discretion in denying her alimony.

Related to its alimony determination, the family court found the following: (1) at the time of trial, Husband received approximately $2,000 a month in social security benefits as his only income, whereas wife received $900 a month in social security benefits plus income from a $15 per hour part-time job; (2) despite claimed medical conditions, Husband has the continued ability to work, even as a part-time or fill-in dentist; (3) despite claimed medical conditions, Wife maintains a fairly active lifestyle; (4) Husband claims to reside on Prowler; and (5) although Wife appears not to have the ability to meet her stated needs independently, she would have sufficient resources based on the property division to meet her actual reasonable needs. In the property division, the court awarded Wife *inter alia* the marital residence valued at $480,600 (burdened with two mortgages), and $332,786.70 in liquid assets after the $200,000 equalization payment from Husband. Husband received $310,716.62 in liquid assets after the equalization payment, Prowler valued at $180,000, and credit for all the funds he already received throughout the proceedings. Each party retained a Fidelity Investments account (Husband's totaled $272,408, and Wife's totaled $107,476.95).

Therefore, the court awarded Wife more liquid assets and a valuable marital residence as a basis upon which to maintain her lifestyle. Combined with Wife's apparent ability to work, the family court reasonably found that Wife possessed enough resources to meet her needs. Moreover, the consideration that Husband was unable to pay alimony because he retired from practice was reasonable.

The assessment of the weight and credibility of evidence lay within the sound discretion of the family court. Wife has failed to demonstrate the family court abused its discretion.

### III. Conclusion

Based on the foregoing, the "Order re Plaintiff's Motion for Pre-Decree Relief (Filed November 16, 2007)" filed on February 5, 2008; the "Order re Motion to Find Defendant in Contempt" filed on March 13, 2008; the "Order re Motion to Enforce" filed November 3, 2009; the "Order Granting in Part and Denying in Part Plaintiff's Motion to Find Defendant in Contempt of Court For Violation of Court Orders and For Other Relief Filed December 28, 2009" filed April 14, 2010; and the "Order Denying Defendant's Motion for Reconsideration Filed July 6, 2010" filed August 3, 2010, are all affirmed.

We vacate the family court's Findings of Fact 120 and 121 and Conclusions of Law 34 and 37(7) in "Findings of Fact and Conclusions of Law" filed on October 28, 2010, and any decision of the family court based upon them, to the extent that they rely on the potential appreciation of the marital residence as a basis to decrease the equalization payment from $265,062.31 to $200,000. Accordingly, we vacate the "Order re Plaintiff's Motion to Correct and Clarify Decision" filed June 7, 2010, and the "Decree Granting Absolute Divorce" filed June 24, 2010, to the extent each incorporates the family court's deviation in the equalization payment. We remand to the family court for further proceedings on the issue of deviation in the equalization payment, consistent with this opinion.

DATED: Honolulu, Hawai'i, March 13, 2014.

On the briefs:

A. Debbie Jew
Charles Jones III
(Ogawa, Lau, Nakamura & Jew)

for Defendant-Appellant/
Cross-Appellee

Robert M. Harris
Edward R. Lebb
Paula S. Nakata

for Plaintiff-Appellee/
Cross-Appellant

Associate Judge

Associate Judge

21

CONCURRING OPINION OF FUJISE, J.

I agree with the disposition and the reasoning of the majority as to virtually all aspects of this case. However, I write separately because I disagree with the implication that the calculation of the fair market value of assets generally includes a component of future appreciation of that asset, such that the family court must now explain why it assumed appreciation in value of the marital residence was not already included in calculating the fair market value of the marital residence and the boat "Prowler."

Here, the family court's division of Marital Partnership Property between the parties resulted in an unequal distribution of the assets in the amount of $265,000. Conclusion of Law (COL) 34. The determination of the values used in reaching that distribution was made, using Net Market Values (NMV) to determine the values in each of the five categories of Marital Partnership Property. COL 13; Hussey v. Hussey, 77 Hawai'i 202, 881 P.2d 1270 (App. 1994) overruled on other grounds by State v. Gonsales, 91 Hawai'i 446, 984 P.2d 1272 (App. 1999). In reaching the NMV, any incumbrance on the property is deducted from the "fair market value" (FMV). The FMV of property is "the amount at which an item would change hands from willing seller to willing buyer, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." Antolik v. Harvey, 7 Haw. App. 313, 319, 761 P.2d 305, 309 (1988).

When, as is often the case, the property in question has not been sold by the time the family court must determine its FMV, the family court must rely on other evidence of value. With regard to real property, for example, the family court may rely, as was done here, on submission of a real property tax bill as evidence of the FMV of that real property.[1] Schiller v. Schiller, 120 Hawai'i 283, 294, 205 P.3d 548, 559 (App. 2009).

---

[1] In the City and County of Honolulu, where the marital residence in this case was located, real property tax assessments are based on the fair market value of the property, which is in turn determined by using the market data and cost approaches. Revised Ordinances of Honolulu, § 8-7.1 (1990).

Appraisals using a market analysis generally include comparing sales prices and attributes of other, comparable properties ("comps") with the attributes of the subject property to arrive at the market value of the subject property. See, for example, the Uniform Residential Appraisal Report ("Appraisal Form") used by FannieMae, https://www.fanniemae.com/singlefamily/selling-servicing-guide-forms?taskId=task-71 (last visited Mar. 12, 2014) ("The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.").[2]

While the purchasers of the comps may well have considered and relied upon the possibility that the properties they are buying may appreciate in value in agreeing to their respective purchase prices, such a consideration, let alone a corresponding dollar figure for that anticipated appreciation, is not generally separately listed as a comp's attribute[3] in this market analysis. Moreover, even if it was in some way quantified, that value would, of necessity, be relevant to the expectations at the point in time that the comps were sold. Values used in the property division are determined the end of the evidentiary part of the trial. Malek v. Malek, 7 Haw. App. 377, 380, 768 P.2d 243, 246 (1989) quoted with approval in Cox v. Cox, 125 Hawai'i 19, 26-27, 250 P.3d 775, 782-83 (2011).

Thus, to ask the family court to explain why future appreciation of the marital residence is not included in the market value of that property may well be asking for the impossible: That value is not generally ascertained when appraisals are done.

However, I do agree that the basis for reaching the $65,000 figure the family court used in this case to reduce the

---

[2] I suspect the market value of a boat is ascertained in a similar way. To the extent it is not, the parties are free to present evidence establishing the methods of establishing fair market value of the Prowler on remand.

[3] The form does ask for an assessment of whether property values in the subject property's neighborhood are "increasing," "stable," or "declining" but does not ask for such information for the comps.

equalization payment was unclear. While the family court identified a number of factors for this reduction, including the relative ages of the parties, the respective needs of the parties, that a significant portion of the assets credited to Husband were prior expenditures made by Husband and Wife had more in liquid assets, no dollar amounts were attributed to any of these factors. Thus, I agree that this case should be remanded for more detailed findings providing the basis for its reduction of the equalization payment.